**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **CHANTAL MURDOCK**<br>2921 District Ave. Apt. #609<br>Fairfax, VA 22031<br><br>Plaintiff,<br><br>v.<br><br>**WILLIAM WHITE**<br>11588 221 St.<br>Cambria Heights, NY 11411<br><br>Defendant. | ) | Civil Case No.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff CHANTAL MURDOCK comes now and alleges as a Complaint against Defendant WILLIAM WHITE the following:

**NATURE OF ACTION**

1. This is a civil action alleging sexual battery and gender-based violence against Defendant William White.

**PARTIES**

2. Plaintiff Chantal Murdock ("Ms. Murdock") is a resident and citizen of Fairfax County in the Commonwealth of Virginia.

3. Defendant William White ("Mr. White") is a resident and citizen of Cambria Heights, New York. Mr. White worked as Ms. Murdock's second-line supervisor for their employer located in Loudoun County, Virginia.

## JURISDICTION

4. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff is a resident of Virginia and Defendant is a resident of New York, and the amount in controversy in this action exceeds the jurisdictional minimum amount for this Court.

5. The tortious acts, statutory violations, and causes of action alleged, as well as Ms. Murdock's resultant injuries, occurred in Loudoun County in the Commonwealth of Virginia.

6. Mr. White is subject to personal jurisdiction of this Court pursuant to Va. Code § 8.01-328.1(A)(3).

## VENUE

7. Venue is proper in the Alexandria division of this district pursuant to 28 U.S.C. § 1391(b)(2) and Local Civil Rule 3(b)(1) because a substantial part of the events or omissions giving rise to this action, including the tortious acts alleged herein, occurred in Loudoun County, Virginia.

## COUNT ONE

**SEXUAL BATTERY**
**(against Defendant White)**

8. The allegations of the foregoing paragraphs are incorporated as if realleged herein.

9. The tort of sexual battery is the intentional unwanted touching of a person's intimate parts (i.e. the genitalia, anus, groin, breast, or buttocks of any person) or material directly covering such intimate parts, committed with the intent to sexually molest, arouse, or gratify, and through the use of actual or constructive force, threat, intimidation, or ruse.

10. On August 24, 2023, after a happy hour with co-workers at an Ashburn, Virginia restaurant, Ms. Murdock and several other co-workers, including her second-line supervisor

Defendant White, went to get milkshakes a few blocks away. Ms. Murdock finished her milkshake, and as she walked past Mr. White to throw her cup in a trash can, Mr. White violently slapped her buttocks so hard it made an audible sound.

11. The slap was painful, humiliating, and completely unwelcome, and Mr. White did it in plain view of all of Ms. Murdock's co-workers who were present. After witnessing Mr. White slap Ms. Murdock, one of Ms. Murdock's male co-workers confronted Mr. White with words to the effect of, "What are you doing? You need to chill." Mr. White laughed in response and said words to the effect of "Don't worry about it!" The same co-worker observed that Ms. Murdock froze and tensed up after Mr. White struck her.

12. When Mr. White violently slapped Ms. Murdock's buttocks through her clothing on August 24, 2023, he did so with the intent to sexually molest, arouse, or gratify himself, and did so through the use of constructive force.

13. Mr. White used constructive force by violently striking Ms. Murdock without her consent and against her will.

14. Mr. White's previous statements and conduct demonstrated that he was sexually aroused by Ms. Murdock, and specifically that he obtained sexual arousal and gratification by violently battering Ms. Murdock's buttocks in a public and humiliating manner.

15. For example, at a November 2022 tech conference, before Ms. Murdock began working on Mr. White's team, and under the ruse of a goodbye hug, Mr. White aggressively squeezed Ms. Murdock's buttocks with his hands, without her consent and against her will, to the point of inflicting pain. Mr. White knew that his conduct was unwelcome because Ms. Murdock had just declined his invitation to spend the evening together and told him that any relationship between them would be strictly platonic and professional.

16. At a February 9, 2023 team happy hour, just weeks after Ms. Murdock had joined

Mr. White's team, Mr. White commented on Ms. Murdock's body in the presence of her new colleagues, specifically how "nice" he found her "butt." Mr. White later boasted to the team members within earshot that at the tech conference in November 2022 he had "grabbed [Ms. Murdock's] cheeks with both hands. One cheek in each hand." Mr. White gestured with his hands to demonstrate how he had violently grabbed her buttocks. As Mr. White proudly told this story to the team, another male supervisor laughed out loud. Later at the happy hour, Mr. White cornered Ms. Murdock as she sat alone and retold the story of how he had grabbed her buttocks at the conference, and appeared to enjoy humiliating her again by reliving his sexual battery of her.

17. On August 31, 2023, one week after he violently slapped Ms. Murdock, Mr. White told her that he and several men on his team had recently discussed Ms. Murdock's butt and the flattering outfit she wore several months ago to an all-hands meeting. Mr. White told Ms. Murdock that she looked so good, that he could "set a cup on" her butt, and that he could "see the dimples" in her butt.

18. While serving as Ms. Murdock's second-line supervisor, Mr. White repeatedly invited her to dine with him alone, invited her to his hotel while the two were on business travel, discussed the purported marital issues he had with his wife, and claimed that his wife did not care what he does as long as he doesn't "get anyone pregnant" or bring home a disease, presumably meaning a sexually transmitted infection.

19. Mr. White also boasted to Ms. Murdock that his wife was a New York state judge, and that he had close relationships with upper-level management at their employer. Upon information and belief, Mr. White made these boastful statements about his powerful connections in an effort to intimidate Ms. Murdock into silence.

20. Due to the severity of Mr. White's conduct in sexually battering Ms. Murdock, she is entitled to punitive damages.

21. As a direct and proximate result of Mr. White's sexual battery of her, Ms. Murdock suffered significant physical and emotional harm. The pain from Mr. White's violent slap continued for the remainder of the day, left a visible red mark on Ms. Murdock's buttocks, and resulted in bruising that lasted approximately four days. Ms. Murdock felt humiliated and violated when Mr. White physically struck her on an intimate part of her body, in plain view of several of her colleagues, and she subsequently suffered and continues to suffer anxiety, panic attacks, and hypervigilance in the workplace.

## COUNT TWO

**SIMPLE BATTERY**
**(against Defendant White)**

22. The allegations of the foregoing paragraphs are incorporated as if realleged herein.

23. The tort of battery is an unwanted touching which is neither consented to, excused, nor justified.

24. As described above, Mr. White's violent slap of Ms. Murdock's buttocks on August 24, 2023, was not consented to, excused, nor justified.

25. Mr. White slapped Ms. Murdock, his second-line subordinate, in a rude and insolent manner that a reasonable person would find objectively offensive. Two of Ms. Murdock's colleagues who witnessed the slap looked at each other in surprise and disbelief at Mr. White's outrageous conduct.

26. Due to the severity of Mr. White's conduct, Ms. Murdock is entitled to punitive damages.

27. As a direct and proximate result of the battery, Ms. Murdock suffered significant physical and emotional harm. The pain from Mr. White's violent slap continued for the remainder of the day, left a visible red mark on Ms. Murdock's buttocks, and resulted in bruising that lasted

approximately four days. Ms. Murdock felt humiliated and violated when Mr. White physically struck her on an intimate part of her body, in plain view of several of her colleagues, and she subsequently suffered and continues to suffer anxiety, panic attacks, and hypervigilance in the workplace.

## COUNT THREE

### CIVIL ACTION FOR GENDER VIOLENCE
### Virginia Code § 8.01-42.1
### (Against Defendant White)

28. The allegations of the foregoing paragraphs are incorporated as if realleged herein.

29. Virginia Code § 8.01-42.1 creates a civil cause of action for any person who is subjected to violence directed against her person where such acts are motivated by gender animosity.

30. Mr. White's violent striking of Ms. Murdock's buttocks on August 24, 2023, described in detail above, constitute violence as defined by Virginia Code § 8.01-42.1, and were motivated by his gender animosity toward women.

31. As alleged above, Mr. White had previously sexually battered Ms. Murdock at a November 2022 tech conference by violently squeezing her buttocks by force and without her consent. Mr. White then repeatedly and publicly boasted about his sexual battery of Ms. Murdock at a February 2023 work happy hour he had organized for his team.

32. Mr. White unsuccessfully pursued a sexual relationship with Ms. Murdock by repeatedly inviting her to meet with him alone at restaurants and at his hotel to dine and consume alcohol. Mr. White also repeatedly invited himself to Ms. Murdock's home, forcing Ms. Murdock to reject his advances.

33. During his tenure as Ms. White's second-line supervisor, Mr. White repeatedly demonstrated his gender-based animosity toward several of his female subordinates, many of

whom he repeatedly sexually harassed, physically battered, and otherwise treated with contempt.

34. For example, Ms. Murdock learned that on or about September 27, 2023, Mr. White and another male supervisor hosted a lunch meeting at a Virginia restaurant to welcome two members of the company's leadership who were in town to visit Mr. White's team's projects. During the lunch, Mr. White reached under the table and put his hand up the skirt of S.J., another of his female subordinates, who was seated next to him. S.J. immediately moved to another seat.

35. Later during that same lunch meeting, after S.J. and a female colleague returned together from the restroom, Mr. White asked loudly enough for all present to hear, "What were y'all doing in there together?" or words to that effect, implying that the two were engaged in something inappropriate or sexual in the restaurant restroom. Mr. White's unwanted touching and his unwelcome comment humiliated and embarrassed S.J. and her female colleague in front of their employer's visiting leaders.

36. Ms. Murdock also learned that at the December 13, 2023 farewell party for a second of his female subordinates, Mr. White showed the subordinate's female friend, whom he had met for the first time earlier at the party, a video on his cellphone which graphically depicted Mr. White engaged in sexual acts with a naked woman. The friend found Mr. White's conduct extremely offensive and unwelcome.

37. Ms. Murdock later learned that at that same party, Mr. White stated to a third female subordinate that she had a "wet pu**y," a comment which the recipient found unwelcome and grossly inappropriate.

38. On another occasion, Mr. White asserted to Ms. Murdock that S.J. only likes to date men "who will beat her up"; that S.J. does so because she is Indian and that is "part of her culture"; and that S.J. "gets off" on getting physically abused. Ms. Murdock found these comments extremely offensive and unwelcome.

39. As a direct and proximate result of Mr. White's gender-based violent slap, Ms. Murdock suffered significant physical and emotional harm. The pain from Mr. White's violent slap continued for the remainder of the day, left a visible red mark on Ms. Murdock's buttocks, and resulted in bruising that lasted approximately four days. Ms. Murdock felt humiliated and violated when Mr. White physically struck her on an intimate part of her body, in plain view of several of her colleagues, and she subsequently suffered and continues to suffer anxiety, panic attacks, and hypervigilance in the workplace.

40. Due to the severity of Mr. White's gender-based violence against Ms. Murdock, she is entitled to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff CHANTAL MURDOCK, by counsel, requests that this Court enter judgment in their favor against Defendant WILLIAM WHITE on the above Counts as follows:

a) Award Ms. Murdock compensatory damages (economic and non-economic) in an amount in excess of $75,000, to be determined by a jury, including pre-trial and post-trial interest, plus demonstrated past and future pecuniary damages, on the above-stated Counts; and

b) Award Ms. Murdock punitive damages to be determined by a jury on all Counts that allow for the recovery of punitive damages; and

c) Award Ms. Murdock attorneys' fees and costs for all Counts that allow for the recovery of attorneys' fees and costs; and

d) Award Ms. Murdock interest, costs including expert costs, and such other and further relief as may be appropriate under the circumstances.

**JURY DEMAND**

Plaintiff Chantal Murdock demands a trial by jury on all counts so triable.

August 22, 2025

Respectfully submitted,

DISTRICT EMPLOYMENT LAW, PLLC

By: _/s/___________________

Peter Whelan (Virginia Bar No. 76224)
Kristen Sinisi (to seek *pro hac vice* admission)
1101 Connecticut Ave. NW, Suite 450
Washington, DC 20036
(202) 810-6150
whelan@districtemploymentlaw.com
sinisi@districtemploymentlaw.com